841 F.2d 1122
 RICO Bus.Disp.Guide 6875
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
C. Fred IDEN; Katherine Iden; the Appliance & Furniture
Mart, Inc., a West Virginia corporation; C. Fred Iden
Builders, Inc., a West Virginia corporation; Fair-Way
Motors, Inc., a West Virginia corporation, Plaintiffs- Appellants,
v.
ADRIAN BUCKHANNON BANK, a West Virginia corporation,
Defendant-Appellee,
John E. Kennedy, Third Party Defendant.
 No. 87-1615.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 2, 1987.
Decided: Feb. 24, 1988.
 
 Henry C. Bias, Jr. for appellant.
 James R. Arnold (King, Betts & Allen, on brief), for appellee.
 Before HARRISON L. WINTER, Chief Judge, K.K. HALL, Circuit Judge, and FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 C. Fred and Katherine Iden, The Appliance & Furniture Mart, Inc., C. Fred Iden Builders, Inc., and Fair-Way Motors, Inc. (collectively "the Idens")[1] sued the Adrian Buckhannon Bank ("Bank"), alleging violations of the RICO Act, 18 U.S.C. Sec. 1962, and the Bank Holding Company Act, 12 U.S.C. Sec. 1972. The district court entered summary judgment for the Bank and the Idens appeal. We affirm in part, vacate in part, and remand.
 
 I.
 
 2
 Prior to this dispute, the Idens and the Bank had conducted business for over twenty years. In 1977, the appellant corporations experienced cash flow problems requiring the appellants, both individual and corporate, to borrow substantial sums of money from the Bank. Due to the long-standing business relationship between the appellants and the Bank, the Idens would endorse blank or incomplete promissory notes, the terms of which would then be entered by the Bank when the appellants' previous notes came due.
 
 
 3
 In 1981, the Idens' account was turned over to John E. Kennedy.[2] Mr. Kennedy was involved directly with the appellants in only one transaction, on April 23, 1982, when Mr. Iden executed from sixteen to eighteen blank notes. Unfortunately, Mr. Kennedy converted the proceeds of two of the notes, at $10,000 each, to himself.[3] As a consequence, the amount of the Idens' loans was improperly increased by $20,000.
 
 
 4
 In August, 1982, Larry B. Garner became the new chief executive officer of the Bank. Believing the Idens' loans to be seriously delinquent with no repayment schedules and inadequate collateral, Mr. Garner initiated negotiations with appellants to restructure their loans. As a result of these negotiations, a consolidation agreement was reached. Approximately one year later, on December 12, 1983, the Bank informed the Idens that the consolidated loans were due on December 17, 1983, and full payment was demanded. Included in these loans were the two fraudulent notes by Mr. Kennedy. Upon discovery of the embezzlement, however, the Bank credited the Idens the full amount of the fraudulent notes.[4]
 
 
 5
 On December 16, 1983, one day before payment was due, the Idens filed this civil suit alleging extortion and mail fraud. The Idens specifically claimed that the Bank fraudulently took control of their personal and corporate property interests; wrongfully took money from their personal accounts; fraudulently obtained notes and personal endorsements for loans for which they were not previously liable; and fraudulently caused them to collateralize the loans in a consolidated loan agreement. The Bank filed a state law pendent counterclaim for collection of the money due.
 
 
 6
 In response to the Bank's motion for summary judgment, the district court found that the Idens had "failed to show any racketeering activity by the Bank." The district court also found, assuming arguendo, that the Bank had engaged in extortion and mail fraud, that the appellants had failed to produce any evidence that the Bank had engaged in a "pattern of racketeering activity." In dismissing the 12 U.S.C. Sec. 1972 charges, the district court held that the Idens had failed to allege: (1) that the Bank's practices were unusual in the banking industry; (2) the existence of an anti-competitive tying arrangement; or (3) that the challenged practices benefited the Bank. Accordingly, the district court granted the Bank's motion for summary judgment. The court then remanded the Bank's pendent counterclaim to the state court. We affirm the district court's judgment, except for its remand of the Bank's counterclaim.
 
 II.
 
 7
 Appellants assert that the district court's entry of summary judgment was premature because the court had never ruled on their motion to compel discovery of certain documents under F.R.C.P. 34. In addition, appellants contend that there was sufficient evidence to avoid summary judgment on the issues of whether the Bank: (1) fraudulently took control of their business, and (2) unfairly required the appellants to guarantee loans for which they were not responsible, constituting an illegal tying arrangement. We are unpersuaded by these arguments and address them seriatim.
 
 
 8
 Appellants argue that they were unfairly denied access to the minutes of the Bank's Board of Directors and Discount (loan) Committee meetings; the statement of John Kennedy describing his fraudulent activities; the statement of Charlene Lobel, Kennedy's secretary; and records relating to approximately 340 promissory notes. Since the appellants' claim of fraudulent appropriation of property rests on the Bank's acts subsequent to Kennedy's embezzlement, however, the statements relating to Kennedy's illegal acts were immaterial to that claim. As to the other records, the Bank offered to supply those documents relating to the Idens' transactions. We fail to see, therefore, that appellants were denied access to any material relevant to their claim.
 
 
 9
 We likewise find no merit in appellants' RICO claim. In order to establish a claim under 18 U.S.C. Sec. 1962, appellants were required to show the existence of a pattern of racketeering activity. International Data Bank v. Zepkin, 812 F.2d 149 (4th Cir.1987). The Idens alleged that the Bank committed extortion and mail fraud. Under West Virginia law, extortion requires a showing of: (1) a threat of injury, and (2) by means of threat, pecuniary benefits are extorted.[5] We agree with the district court's finding that "[the] Bank was pursuing its legitimate efforts to restructure [appellants'] loans that it considered seriously undercollateralized." In addition, the appellants were represented by counsel throughout the restructuring negotiations with the Bank. There was simply no evidence of a "threat" by the Bank in the legal sense of the word. Nor was there evidence that the Bank was engaged in a scheme to defraud, a necessary element of mail fraud. Although Kennedy may have defrauded both appellants and the Bank, there was never any question but that the appellants would be credited the amount stolen by Kennedy. Far from establishing a pattern by the Bank, appellants failed to demonstrate any racketeering activity.
 
 
 10
 We also reject appellants' argument that the Bank's efforts to obtain additional collateral in the consolidation agreement amounted to an illegal tying arrangement under 12 U.S.C. Sec. 1972 of the Bank Holding Company Act. In Rae v. Union Bank, 725 F.2d 478, 480 (9th Cir.1984), the Ninth Circuit held that the following elements of an illegal tying arrangement must be alleged:
 
 
 11
 First, the plaintiff must show that the banking practice in question was unusual in the banking industry. Second, the plaintiff must show an anti-competitive tying arrangement. Third, the plaintiff must demonstrate that the practice benefits the bank (citations omitted).
 
 
 12
 Here, there was no evidence that the additional assurances sought by the Bank for the delinquent loans were unusual. Moreover, not only did the appellants fail to allege an anti-competitive effect, but the Idens, not the Bank, arguably reaped the greater benefit, as foreclosure was delayed for at least a year.
 
 
 13
 Lastly, we find that the district court's remand of the Bank's pendent state law counterclaim to state court was error. By definition, to remand is to send a case back to the same court from which it originated. Since the Bank's counterclaim was originally brought in federal court, the proper disposition would have been to dismiss the Bank's counterclaim without prejudice.
 
 
 14
 Accordingly, the portion of the district court's order granting summary judgment in favor of the Bank is affirmed. The portion of the district court's order remanding the Bank's counterclaim to the state court is vacated and remanded to the district court with instructions to dismiss the Bank's counterclaim without prejudice.
 
 
 15
 AFFIRMED in part; VACATED in part; and REMANDED.
 
 
 
 [1]
 The individual appellants are husband and wife. The corporate appellants are closely held Iden family corporations, primarily owned and controlled by Mr. Iden
 
 
 [2]
 Prior to 1981, V. Russell Freed, formerly President of the Bank, handled the Idens' accounts until poor health forced him to give up his banking duties. Appellants do not question the conduct of Mr. Freed or the Bank prior to 1981
 
 
 [3]
 Kennedy was subsequently convicted of two violations of 18 U.S.C. Sec. 656. (Embezzlement by a bank officer.)
 
 
 [4]
 Although the Bank discovered Kennedy's embezzlement in early 1983, it was proscribed from notifying the Idens pending the completion of the FBI's investigation
 
 
 [5]
 W.Va. Code, Sec. 61-2-13